## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| JEFFREY ALLEN SIMMONS, as | ) | | |
| Personal Representative of the | ) | | |
| ESTATE OF KYLE STEVEN SHAW, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | Case No. | CIV-23-859-HE |
| | ) | | |
| OKLAHOMA COUNTY CRIMINAL | ) | | |
| JUSTICE AUTHORITY, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MOTION TO DISMISS COMPLAINT BY DEFENDANTS

This case stems from the death of Kyle Steven Shaw ("Shaw") who died after he illegally obtained and ingested fentanyl while in custody at Oklahoma County Detention Center ("OCDC") awaiting trial on charges for Assault and Battery with a Dangerous Weapon.

In essence, the Complaint is predicated on the theory that jail officials inflicted cruel and unusual punishment on Shaw by filing to prevent him from engaging in prohibited and illegal conduct—ingesting fentanyl—while he was a pretrial detainee. However, the type of risks that offend the Constitution are those an inmate cannot reasonably be expected to avoid on his own.

## ARGUMENTS AND AUTHORITIES

On September 26, 2023, Plaintiff Jeffrey Allen Simmons, who is Shaw's brother, filed this action, as the Personal Representative of Shaw's Estate ("Plaintiff"). Plaintiff seeks to hold Defendants Oklahoma County Criminal Justice Authority ("OCCJA") and

the Board of County Commissioners for Oklahoma County ("BOCC") responsible for Shaw's death from fentanyl.  Specifically, Plaintiff alleges that Defendants failed to protect Shaw from a known and unreasonable risk of drug-induced harm and failed to provide adequate medical care to Shaw after he was exposed to a "drug-laden environment" that Defendants created and fostered.

The OCCJA and BOCC deny Plaintiff's allegations and further deny that Plaintiff is entitled to any relief.  First, the Complaint fails allege sufficient facts that demonstrate Shaw was subjected to unconstitutional conditions of confinement, that he was denied adequate medical care, or that a policy or custom of Defendants was the moving force behind Shaw's purported constitutional injuries.

Second, Plaintiff's claims that are predicated on Oklahoma law must be dismissed for lack of subject matter jurisdiction because Defendant OCCJA and Defendant BOCC are immune from liability under the Oklahoma Governmental Tort Claims Act. ("GTCA").

Therefore, as demonstrated below, Defendants are entitled to dismissal.

## I.   THE BOCC IS NOT A PROPER PARTY TO THIS ACTION BECAUSE PLAINTIFF HAS FAILED TO ALLEGE AN INJURY FAIRLY TRACEABLE TO THE CONDUCT OF THE BOCC.

Plaintiff seeks to hold the BOCC liable claiming it "has a non-delegable statutory duty to provide a jail for Oklahoma County that is adequate for safe keeping of inmates." [Doc. No. 1, at ¶ 3].  However, as a matter of the law, the BOCC has no statutory authority to act in jail operations.  *See Brashear v. Bd of Cty. Commiss'r of Okla. Cty,* 402 F.Supp3d. 1279, 1283 (W.D. Okla. 2019) citing *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988), *abrogated in part on other grounds*.  In addition to the lack of statutory authority

over the OCDC, Defendant BOCC does not have any policy-making authority with regard to the operations of the Oklahoma County Detention Center, and the BOCC does not act in a supervisory capacity over other elected county officers like the Oklahoma County Sheriff, or in this case over the OCCJA.  *See Jantzen v. Hawkins,* 188 F.3d 1247, 1259 (10th Cir. 1999)(noting that a county sheriff neither reports to nor is controlled by a Board of County Commissioners).  In fact, the OCCJA is a public trust and a political subdivision of the State of Oklahoma that is separate and distinct from Oklahoma County. *See* 51 O.S. § 152(11)(d); 60 O.S. § 176, *et seq.*

To the extent that Plaintiff seeks to hold the BOCC liable based upon a funding theory, funding decisions cannot serve as a basis for constitutional tort liability.  *See Shepherd v. Dallas Cnty.,* 591 F.3d 445, 454 (5th Cir. 2009)(stating that a claim of insufficient funding of jail operations does not establish a pervasive pattern of serious deficiencies in the conditions of confinement for Due Process purposes).  Even if it could be assumed, for the purposes of argument alone, that funding decisions could serve as a basis for liability under a theory of systemic deliberate indifference, Plaintiff's claim would, nonetheless, require dismissal.  In pressing his claim, Plaintiff makes nothing more than a generalized allegation that the Board failed to properly fund jail operations.  He makes no allegations regarding the manner in which the detention center is funded, from what sources funding is available, what percentage of available county funds are allocated to the detention center, nor how much is actually spent on jail operations.  Nor does he allege any causal connection between funding, or lack thereof, and the conditions of

Shaw's confinement. Therefore, because Defendant BOCC is not a proper party, it is entitled to dismissal.

## II.  PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER SECTION 1983 AND, THUS, DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE FEDERAL LAW CLAIM PURSUANT TO RULE 12(B)(6).

### A. STANDARD OF REVIEW.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the plaintiff has failed to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  A motion to dismiss may be granted if, "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain enough facts to state a claim to relief that is plausible on its face."  *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007)(quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Stated another way: "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Applying these principles to the Complaint in the case at bar, the same must be dismissed for failure to state a claim upon which relief may be granted.

**B. THE COMPLAINT FAILS TO DEMONSTRATE A VIOLATION OF SHAW'S CONSTITUTIONAL RIGHTS.**

To state a claim under Section 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Here, Plaintiff contends that the Defendants are liable for failing to protect Shaw from a known risk of "drug induced" harm and for failing to provide adequate medical care.  Each of these claims, however, is subject to dismissal on the grounds that the facts as pled do not establish a plausible claim for relief and do not establish the existence of a custom or policy that is necessary for municipal liability.

**1.  Conditions of Confinement.**

To establish a "conditions of confinement" claim, a plaintiff must make two showings: (1) the conditions complained of are "sufficiently serious" to implicate constitutional protection; and (2) prison officials acted with "deliberate indifference" to the health or safety of the plaintiff.  *Farmer*, 511 U.S. at 834.

Regarding the first element of a conditions of confinement claim, a plaintiff must establish that prison conditions, alone or in combination, involve "wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Prison conditions may be restrictive or even harsh, as that is the nature of the penalty of confinement.  *Id.*

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  As such, to satisfy the first prong of a conditions of confinement claim, a plaintiff must show that the conditions were more than merely uncomfortable but rose to the level of posing a substantial risk of serious harm to the plaintiff.  *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001).

Secondly, to state a claim under Section 1983 for unconstitutional conditions of confinement, a plaintiff must demonstrate that the defendant was deliberately indifferent to the plaintiff's health or safety.  *Farmer*, 511 U.S. at 827.  "[D]eliberate indifference is a stringent standard of fault."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 827.  The deliberate indifference standard entails more than mere negligence on the part of the defendant.  *Id*. at 835-36. Rather, it is akin to "recklessness."  *Id*.  The defendant must have known that an excessive risk of harm existed and disregarded the risk.  *Id*. at 837.  That is to say, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*.  As stated by the Supreme Court, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Id*. at 838.

Defendants do not dispute that fentanyl is a dangerous drug. However, the objective prong requires factual allegations showing that the inmate was incarcerated under conditions posing a substantial risk of serious harm. *Farmer,* 511 U.S. 834. Moreover, to plausibly plead the subjective component, Plaintiff must plead sufficient facts showing deliberate indifference to the known substantial risk of harm. *Id.*

Nowhere in the Complaint are there any facts which plausibly allege Shaw was incarcerated under conditions posing a substantial risk of harm. Likewise, notably absent are any facts that suggest any official was deliberately indifferent to a known risk of harm to Shaw. Indeed, the allegations in the Complaint are legal conclusions couched as facts.

 The Complaint fails to plead how any the jail official were involved in the drug-smuggling scheme or how any of the jail official came to obtain any knowledge about the prevalence of drugs at OCDC; how they ignored that knowledge, or how they failed to curb the introduction, spread, and usage of drugs at OCDC. While Plaintiff refers to a jail employee, who was arrested for smuggling narcotics into the OCDC, this occurred three months **after** Shaw's death, and fails to suggest that Shaw was incarcerated under conditions possible a substantial risk of serious harm. [Doc. 1, at ¶ 19]. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1289 (10th Cir. 2019) (dismissing the complaint because the findings from an OIM report concerning deputy misconduct issued in 2013, the year **after** the assault at issue failed to demonstrate the requisite direct causal link between the municipal action and the deprivation of federal rights); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (recognizing that the "basic princip[le]s of linear time prevent [a court] from seeing how conduct that occurs *after* the alleged violation could

have somehow caused that violation at issue in the complaint." ).  The same is true with the general references to the Multicounty Grant Jury Report issued on March 23, 2023, over a year after Shaw's incarceration.

More significantly, there are no facts alleged to suggest that any jail official subjectively knew that Shaw was at risk, let alone at a substantial risk, of smuggling, using, or obtaining drugs during his incarceration.  This is fatal to Plaintiff's failure to protect claim.

### 2.  Adequate Medical Care.

To state a claim under Section 1983 for a violation of an inmate's right to adequate medical care, a plaintiff must demonstrate that the defendant was deliberately indifferent to his serious medical needs.  *Estelle*, 429 U.S. at 104.  "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 827 (1994).  The deliberate indifference standard relating to medical care has two components, each of which a plaintiff must establish: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending official act with a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  The inquiry for the objective component is whether Plaintiff alleges a "sufficiently serious" harm.  *Strain v. Regalado*, 977 F.3d 984, (10th Cir. 2022).

To survive dismissal, Plaintiff must plead sufficient facts that support the notion that Shaw suffered from a sufficiently serious medical need that has been diagnosed by a physician as mandating treatment or that his intoxication symptoms were "so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) (internal quotations omitted).

Here, Plaintiff has failed to plead any facts to establish the subjective component of the deliberate indifference test—i.e., that Shaw faced a known substantial risk of serious harm and that jail officials disregarded that risk by failing to take reasonable measures to abate it. *Quintana,* 973 F.3d, at 1030. "The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Heidtke v. Corr. Corp. of Am.*, 489 Fed. Appx. 275, 280 (10th Cir. 2012), (unpublished) (quoting *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

Here, there are no facts alleged to suggest any jail official knew or should have known that Shaw was suffering from acute intoxication associated with his fentanyl use. Likewise, there are no facts alleged that any jail official observed Shaw under the influence of fentanyl or observed any signs or symptoms that Shaw needed medical assistance or that he would die from an overdose of the drug, let alone that any official disregarded this risk.

III.   **THE COMPLAINT FAILS TO DEMONSTRATE A CUSTOM OR POLICY OF THE OCCJA OR THE BOCC WAS THE MOVING FORCE BEHIND A CONSTITUTIONAL VIOLATION.**

As demonstrated above, the Complaint fails to establish a constitutional violation, and for this reason alone, the analysis is at an end and the claim for municipal liability must fail. Nevertheless, assuming for the purpose of argument alone, Plaintiff could state a

plausible claim predicated on the conditions of Shaw's confinement or access to adequate medical care, the *Monell* claims still fail.

While an action under Section 1983 may be brought against a municipal body or other local government entity, recovery is limited to acts that are officially sanctioned by such an entity; it is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  "Put another way, for a local government unit such as the OCCJA or Oklahoma County to be liable for violating § 1983, that unit's allegedly unconstitutional act (or the act of the defendant in his or her official capacity) must execute 'a government's policy or custom.'"  *Jantzen*, 188 F.3d at 1259 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Id*. at 694. The actions of the governmental entity must be the moving force behind the constitutional violation. *Id*. The Supreme Court has held that governmental liability for a constitutional violation "attaches where - and only where - the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986).

To establish the existence of a "custom," a plaintiff must demonstrate: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference or tacit approval of misconduct by policy-making officials; and (3) injury to the plaintiff as a result of the custom.  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty*., 996 F.2d

1035, 1041 (10th Cir. 1993).  Typically, a plaintiff must demonstrate that similarly situated persons were subjected to the same improper treatment.  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995).  Municipal liability may also be imposed if the action is taken pursuant to a "policy" provided the plaintiff demonstrates: (1) a policy adopted by the municipality or officials responsible under the law for making policy in the area; or (2) a decision made by an official with final policy-making authority within the area.  *Pembaur*, 475 U.S. at 480-81; *Randle*, 69 F.3d at 447-48.  Action pursuant to a "policy" may also be predicated on "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval."  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010).

Absent a claim of systemic failure, a plaintiff must ordinarily make two showings in order to impose municipal liability.  The plaintiff must first show that an employee of the governmental entity caused the violation of a constitutional right through their acts or omissions.  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023); *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1190-91 (10th Cir. 2020).  The plaintiff must then go further and establish that the unconstitutional conduct of the employee was attributable to a custom or policy of the governmental entity.  *Id.*  The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

*Pembaur*, 475 U.S. at 479 (emphasis in original).  Concomitantly, a government body is not liable under Section 1983 for the acts of an employee under a theory of *respondeat superior*.  *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).

The law is clear that to establish municipal liability, the Plaintiff must allege basic facts to show that an action of the OCCJA and/or the BOCC was the moving force behind the alleged unconstitutional violation.  Here, the Complaint is plainly devoid of any factual allegation that would demonstrate municipal liability.  Notably absent are any allegations that identify any specific act or omission by any jail official that is attributable to the Defendants or any policy or practice of the Defendants that was the moving force behind Shaw's alleged unconstitutional treatment.

Indeed, to establish deliberate indifference in the municipal context, "the municipality [must have] actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and [it must] consciously or deliberately choose[ ] to disregard the risk of harm." *See Buchanan v. Turn Key Health Clinics,* No., 18-CV-00171-JFH, 2022 WL 2070493, at *5-7 (E.D. Okla. June 8, 2008) (nothing that the United States Supreme Court has held that 'it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality" rather, he must prove that the municipality was the moving force behind the alleged injury.") (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

Instead, Plaintiff seeks to hold Defendants liable for Shaw's alleged unconstitutional conditions of confinement by generally referring to the stale DOJ report from 2008, the National Institute of Corrections ("NIC"), and the Grand Jury Report in

2023. However, these reports do not demonstrate a policy or custom of unconstitutional conditions of confinement at the OCDC and fail to establish municipal liability under *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658 (1978).

First, the reports have no connection to the conditions that Shaw was subjected to during his incarceration, which is necessary to demonstrate the required direct causal link between municipal action and the alleged constitutional deprivation.

Finally, to the extent that Plaintiff is alleging a violation of Shaw's constitutional rights predicated on failure to train, supervise, or discipline, likewise fails. [Doc. 1, at ¶¶ 22, 33, 34, and 42]. Conclusory legal assertions such as these are wholly insufficient to raise Plaintiff's right to relief above a speculative level. *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (stating "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

While failure to properly train and supervise employees may serve as the basis for Section 1983 liability, it may do so only in limited circumstances; in such instances, a plaintiff must show that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Canton v. Harris*, 489 U.S. 378, 387-88 (1989); *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Here too, Plaintiff fails to identify what specific training practices were deficient and/or how the failure to provide adequate employment practices contributed to a violation

of Shaw's rights.  Having failed to plausibly plead the existence of any custom or policy of the OCCJA or the BOCC that contributed to a violation of her constitutional rights, Plaintiff's Complaint against the Defendants must be dismissed for failure to state a claim upon which relief may be granted.

### III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S ADDITIONAL SUPPLEMENTAL STATE LAW CLAIMS.

In Counts Two and Three, Plaintiff alleges two state law claims predicated on negligence and wrongful death. [Doc. 1, at p. 16-19].  However, the Oklahoma Governmental Tort Claims Act ("GTCA") bars these claims.  Okla. Stat. tit. 51, § 151 *et seq*.  The Act generally adopts the doctrine of sovereign immunity for the state and its political subdivisions and waives it in part, but only in the manner provided by the Act.  51 O.S. § 152.1(A). On this point, Defendants retain immunity for two significant reasons. First, Plaintiff did not file a valid notice of claim prior to initiating suit.  *See Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996).  Second, both Oklahoma County and OCCJA are immune from liability for constitutional, statutory or common law state claims arising out of jail operations. *See* 51 O.S. § 155(25); *Medina v. State,* 871 P.2d 1379, 1382 (Okla. 1993); *Redding v. State,* 882 P.2d 61 (Okla. 1994).

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully pray that this Honorable Court will grant the Motion to Dismiss in all respects.

Respectfully Submitted,

VICKI ZEMP BEHENNA
DISTRICT ATTORNEY

/s/  Carri A. Remillard
Carri A. Remillard (OBA #21539)
Assistant District Attorney
Oklahoma City, OK  73102
Telephone: (405) 713-1600
Facsimile: (405) 713-1749
carri.remillard@oklahomacounty.org

ATTORNEY FOR DEFENDANTS


## CERTIFICATE OF DELIVERY

The foregoing was delivered using the ECF System for filing, and based upon the records on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following participants:

J. Blake Johnson

Rylan Kiesel

ATTORNEYS FOR PLAINTIFFS


s/Carri A. Remillard